**AUTRY**

v.

**REPUBLIC PRODUCTIONS, Inc. et al.**

**No. 13522.**

United States Court of Appeals,
Ninth Circuit.

June 4, 1954.

Rehearing Denied July 16, 1954.

Gang, Kopp & Tyre, Martin Gang, Robert E. Kopp, Milton A. Rudin, Los Angeles, Cal., for appellant.

Loeb & Loeb, Harry L. Gershon, Herman F. Selvin, Los Angeles, Cal., for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellant brought this action for an injunction, to restrain appellees from exhibiting motion pictures in connection with commercially sponsored or sustaining television broadcasts, where those motion pictures contain appearances of appellant. In its opinion below, 104 F. Supp. 918, the District Court gave judgment to appellees, holding that the contracts between appellees and appellant placed no restrictions upon appellees' use or exhibition of the motion pictures. There were five contracts executed over a period of a dozen years, but the contracts are sufficiently similar that they need not be discussed individually. The trial judge used paragraph 9 of the 1938 contract as an example. That was fair to both parties, and we shall do likewise:

"9. The producer shall have the right to photograph and/or otherwise reproduce any and all of the acts, poses, plays and appearances of the artist * * * during each employment period, and to record for motion picture purposes the voice of the artist * * * and to reproduce and/or transmit the same in connection with such acts, poses, plays and appearances as the producer may desire, and the producer shall own solely and exclusively all rights of every kind and character whatsoever in and to the same perpetually, including the right to use and exploit all or any part of the same in such manner as the producer may desire, and including, as well, the perpetual right to use the name and likeness of the artist and recordations and reproductions of his voice in connection with the advertising and exploitation thereof. The artist does hereby also grant to the producer the right to make use of and to allow others to make use of his name (in addition to and other than in connection with the acts, poses, plays and appearances of the artist hereunder) for the purpose of advertising, exploiting and/or publicizing photoplays in which the artist appears, as well as the right to make use of and distribute his physical likeness and his voice for the like purpose. * * *."

This contract, like the contracts in Republic Pictures Corp. v. Rogers, 9 Cir., 213 F.2d 662 contains the descriptive words (1) "acts, poses, plays and appearances" and (2) "name, voice, and likeness." As set forth in our opinion in the Rogers case, we interpret these two sets of words as applying to two different and distinct subject matters. The former refers to the artist's

activities or appearances in a motion picture as such; the latter set of words refers to a reproduction of the name, voice or likeness of the artist apart from his activities or appearances in the former, and lacking the motion and dynamic and dramatic qualities contained in motion pictures. There are limitations placed upon appellees' use of the latter, but appellant granted for valuable considera- on all rights, unrestricted to appellees in their ownership of the former.

Although appellees unquestionably have the right to cut and edit the motion pictures, and to license others to do the same, we can conceive that some such cutting and editing could result in emasculating the motion pictures so that they would no longer contain substantially the same motion and dynamic and dramatic qualities which it was the purpose of the artist's employment to produce. And although appellees unquestionably have the right to exhibit the motion pictures in connection with or for the purpose of advertising commercial products of all sorts, we can conceive that some such exhibitions could be so "doctored" as to make it appear that the artist actually endorses the products of the programs' sponsors.

The record in this case shows that the appellees proposed to license motion pictures featuring appellant, which said pictures would be edited to 53 or 53½ minutes each, in length, thus permitting approximately 7 minutes of advertising in an hour television program. It was this proposed use that was alleged in appellant's complaint and as to which an injunction was asked. The parties stipulated that the License Agreement through which the pictures were proposed to be exhibited, expressly prohibited " * * * any advertising * * * [or] any statements which * * * may be understood to be an endorsement of any sponsor * * * [etc.] by * * * any actor or actress appearing therein * * * or * * * that any such person is connected or associated with * * * Station or any Sponsor. * * * All advertising issued

* * * relating to any picture shall give cast and due credit in the same manner * * * as such credits appear in the main title of the respective picture."

The issue here, is whether appellees should be enjoined from cutting the appellant's performances to approximately 53 minutes, and showing them in connection with commercial advertising over television, pursuant to a License Agreement such as that above quoted. The judgment from which the appeal is taken goes farther than the printed opinion, in that it expressly permits appellees:

" * * * to cut, edit and otherwise revise and to license others [to do likewise] * * * in any manner, to any length and for any purpose * * * ."

Appellant has put in issue the breadth and sweep of this judgment. We agree with appellant that this broad language nullifies all of the clauses in the employment contracts which were introduced therein for the protection of appellant with reference to the type and quality of photoplays in which he rendered his services. The issue tendered to the trial court was whether appellees could make use of the motion pictures in the manner proposed; the issue was not one of ascertaining what other uses could be made of them, or how far appellees might go. Because this part of the judgment goes beyond the issues presented to the trial court, we hereby disapprove of it. We simply hold that appellees should not be enjoined from cutting the appellant's performances to approximately 53 minutes, and showing them in connection with commercial advertising over television, pursuant to a License Agreement such as that above quoted.

Appellant has raised the issue of unfair competition and the possible application of the Lanham Act, Title 15 U.S.C.A. §§ 1125 and 1126. Even aside from the consent which we find was given by appellant to appellees in the contracts, appellant argues that appellees

might so alter or emasculate the motion pictures as to render them substantially different from the product which the artist produced. Further, that the exhibition of old pictures which depict appellant in clothes which are no longer in style, and in autos which are no longer modern, could be quite harmful to his modern reputation. As to the latter point, the consent which we have found in the contracts extends to this risk. As to the question of appellees' emasculating the pictures, we have attempted to leave that question open, to be properly presented when and if the occasion arises; we have disapproved that part of the lower court judgment which could be considered authority for such possible abuse, although our disapproval should not be taken as passing on the merits of what was there said. Appellant is not in a position to further urge unfair competition, since it is our interpretation of the contracts that appellant consented to such exhibition of the pictures as is proposed here.

As herein modified, the judgment of the trial court is affirmed.