**Sophia CIVORU, Appellant,**

v.

**NATIONAL BROADCASTING COMPA-NY and Gertrude Berg, Appellees.**

**No. 32, Docket 25115.**

United States Court of Appeals Second Circuit.

Argued Oct. 17, 1958.

Decided Dec. 16, 1958.

Sophia Civoru, pro se, for appellant.

George A. Elber, Davis & Gilbert, New York City, for appellees.

Before HAND, HINCKS and WATERMAN, Circuit Judges.

PER CURIAM.

This is an appeal by the plaintiff from a summary judgment, dismissing her complaint in an action for an injunction, damages, and for an accounting of the profits made by the defendants by the exploitation of a radio play, known as "The Rise of the Goldbergs." The facts as stated in the complaint were as follows. The plaintiff, her husband, and the defendant, Berg, formed a partnership in which the plaintiff furnished the "scheme, title, characters, outline, plan, plot, action, idea and continuity for an entire series of connected radio-broadcasting programs." The defendant, Berg, prepared dialogues for several episodes in this play, but thereafter the partnership agreement was ended by mutual consent in August, 1929. In September, 1929, the defendant, Berg, demanded of the plaintiff the return of her dialogues although these necessarily were based upon the plaintiff's contribution, so that they could not be separated. The plaintiff did return to Berg the dialogues, and thereafter Berg appropriated to herself the plaintiff's "scheme, title, characters, outline, plan, plot, action, idea and continuity." On January 7, 1930 Berg entered into a contract with the other defendant, National Broadcasting Company, by which she transferred all her right in all manuscripts, present and future, to that company, together with any copyrights upon the same, and covenanted that she was the "author, proprietor and sole owner of the manuscripts."

On November 20, 1929, Berg started to broadcast "The Rise of the Goldbergs," and in April, 1930, the plaintiff began an action against her in the Supreme Court of the State of New York for conversion and to recover the sum of $100,000 damages for the wrongful appropriation of the "scheme, title, characters, outline, plan, plot, action, idea and continuity for the entire series of connected radio-broadcasting programs." This action came on for trial in the state court in January, 1935, and was dismissed in March of that year. The decision contained findings that the plaintiff and her

husband and Berg made a written partnership agreement in May, 1929, to produce radio programs; that in June, 1929, the defendant composed and arranged dialogues for portions of not more than two episodes, and delivered them to the plaintiff; that the parties ended their partnership by mutual consent in August, 1929; that in September, 1929, plaintiff returned to the defendant the "aforesaid manuscripts" and "abandoned any right, title or interest therein"; and that after November, 1929, the defendant broadcast "a radio program consisting of a continuity made up of a series of episodes or one-act plays called 'The Rise of the Goldbergs' or 'The Goldbergs.' "

The plaintiff had originally retained one, Malevensky, to represent her in the action; and when he died in October, 1932, another member of his firm continued to represent her until October 15, 1933, when a second attorney, named Granik, "fraudulently" told her that her action had been dismissed, but that, if she were to retain him, it could be reinstated. Thereupon she did retain Granik, who changed the action from one in conversion to one for an accounting.

The plaintiff's only specifications of "fraud" against Granik are (1) that, as we have said, he falsely told her that her state action had been dismissed, and (2) that in the trial of the state court action he put in evidence a false copy of the agreement of the partnership. The first "fraud" we disregard as obviously irrelevant. Her allegation that Granik substituted a changed contract of partnership we should not feel justified in disregarding on a motion for summary judgment, if the charge were material to the validity of the estoppel arising from the judgment in the state court action. However, it is not material. The plaintiff asserts that the original contract had provided in the 14th paragraph that in case of termination of the partnership the plaintiff should be reinvested with "her schemes, titles, characters, outlines, plans and plots." In September, 1929, however, when the firm was dissolved, although the plaintiff returned to Berg the

dialogues which Berg had composed, the plaintiff claims that Berg "appropriated" her plot, characters, etc., and thereafter "exploited" them by radio. The contract submitted to the state court at the trial did not contain the clause that upon termination of the firm the plaintiff should be "reinvested" with her rights and substituted another clause in its place.

Nowhere in the complaint or statement answering the motion to dismiss does it appear that Berg was privy to this substitution, or that the absence of the original clause was the reason for the court's finding that the plaintiff had abandoned to Berg "all right, title, and interest in said plot, character, scheme, play outline and continuity." There is no reason to assume that the terms of the settlement between the parties upon the termination of the partnership should not have varied from those of the original partnership; and there is nowhere any suggestion that Berg was party to any suppression by Granik of the terms of that original contract. The "fraud" that will reopen a judgment must be one in which the opposite party shares; it is not enough that the losing party has been a victim of his own attorney's misconduct, whether that be negligence or deceit. A classic statement of the doctrine is from Mr. Justice Miller's opinion in United States v. Throckmorton, 98 U.S. 61, 65–66, 25 L.Ed. 93: " * * * Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; * * * or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases * * * are reasons for which a new suit may be sustained * * * ". In New York, whose law controls in the case at bar, Judge Earl in Ward v. Town of Southfield, 102 N.Y. 287, 293, 6 N.E. 660, 661, put the doctrine in the following language: "There must be by one party a false and fraudulent representation, or a fraudulent affirmative act, or a fraudulent concealment of a fact for the purpose of obtaining an undue and * * * unjust and unconscionable judgment."

In two actions the plaintiff sought to recover from Granik because of his misconduct and the second of these was settled by a release. It was twenty-two years after the judgment in the state court, and more than six years after she says that she discovered the use of the substituted partnership agreement, that the plaintiff first challenged the estoppel of the state judgment, and that was after any direct action "on the ground of fraud" had been barred (§ 48(5), N.Y. Civil Practice Act). Even though Berg could be charged with Granik's supposed fraud, we should not hold that the estoppel of the state court judgment might be avoided by such a stale claim.

There remains the question whether the National Broadcasting Company may avail itself of the estoppel though it was not a party to the state action. As we have said, Berg had transferred all her rights, whatever they were, to this company before the plaintiff sued Berg in the state court; and the company was therefore in the position of a transferee before the action was begun. Whatever doubts may have survived the decision of the Court of Appeals of New York in Good Health Dairy Products Corp. of Rochester v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401, have now been definitively laid in Israel v. Wood Dolson Co., 1 N.Y.2d 116, 151 N.Y. S.2d 1, 134 N.E.2d 97. The old doctrine no longer obtains that estoppels must be mutual except in those situations that had formerly been specified. Just what remains of the necessity for mutuality it is hard to say, but the Court of Appeals appears to have held that, when a party has been defeated in a claim because one of its elements was decided against him, he must accept as conclusive the decision as to that element, when it arises as a constituent of a claim against another

obligor. We can hardly suppose that this new doctrine is valid in every possible setting, but certainly the relation of the National Broadcasting Company to Berg was as close as that of the Wood Dolson Company to Gross in the second decision just cited. Having had her day in court against Berg and lost, the plaintiff may not try out the same issue against the National Broadcasting Company.

We cannot see how the validity of the copyright taken out by the National Broadcasting Company is relevant to the disposition of this appeal.

Judgment affirmed.