FIRST CONGREGATIONAL CHURCH AND SOCIETY OF BURLINGTON, IOWA, et al., Plaintiffs-Appellants,

v.

EVANGELICAL AND REFORMED CHURCH et al., Defendants-Appellees.

No. 320, Docket 27253.

United States Court of Appeals Second Circuit.

Argued May 10, 1962.

Decided Aug. 1, 1962.

See also 160 F.Supp. 651 and 21 F.R.D. 325.

John T. Redmond, of Wood, France & Tully, New York City, on the brief for all defendants-appellees other than American Bd. of Commissioners for Foreign Missions and Evangelical and Reformed Church; Paul D. Miller and Walter W. Kocher, of Mudge, Stern, Baldwin & Todd, New York City, on the brief for defendant-appellee Evangelical and Reformed Church; John W. Mueller, St. Louis, Mo., co-counsel on the brief for Evangelical and Reformed Church and added defendants-appellees Fred Hoskins and James E. Wagner; Orrin G. Judd and Edward A. Bernstein, of Goldstein, Judd & Gurfein, New York City, on the brief for defendant-appellee American Bd. of Commissioners for Foreign Missions), for defendants-appellees.

Before CLARK, SMITH, and KAUFMAN, Circuit Judges.

CLARK, Circuit Judge.

Plaintiffs-appellants appeal from a decision of the district court dismissing their complaint on the grounds that all the matters stated therein had been previously adjudicated against all the plaintiffs and all classes of parties represented by them in a final adjudication by the New York Court of Appeals in Cadman Memorial Congregational Soc. of Brooklyn v. Kenyon, 306 N.Y. 151, 116 N.E.2d 481. Plaintiffs had sought declaratory and other relief below, based upon the asserted invalidity of a far-reaching agreement of church union. Judge Dawson ordered the case to trial in denying summary judgment, D.C.S.D.N.Y., 160 F.Supp. 651;[1] thereafter Judge Dimock ordered a separate trial of the issue of *res judicata* and collateral estoppel; upon such trial he found for the defendants, see D.C.S.D.N.Y., 198 F.Supp. 677, and eventually entered the judgment appealed from. We here affirm that judgment.

This litigation has been protracted and acrimonious. It arose from the historic decision made by the defendant General

Kenneth W. Greenawalt, of Davies, Hardy & Schenck, New York City, and Robert C. C. Heaney, of McCobb & Heaney, Grand Rapids, Mich. (Thomas T. Adams and Lawrence P. J. Bonaguidi, of Davies, Hardy & Schenck, New York City, and William K. Van't Hof, of Mc-Cobb & Heaney, Grand Rapids, Mich., on the brief), for plaintiffs-appellants.

David W. Peck, of Sullivan & Cromwell, New York City (Loren T. Wood and

1. In First Cong. Church and Society of Burlington, Iowa v. Evangelical and Reformed Church, D.C.S.D.N.Y., 21 F.R.D. 325, Judge Dawson denied the application of yet other interests to intervene as parties plaintiff.

Council of the Congregational Christian Churches of the United States to enter into a union with the defendant Evangelical and Reformed Church to form the United Church of Christ. After lengthy study and negotiation a group representing the Evangelical and Reformed Church and a commission appointed by the General Council met and adopted a document called the Basis of Union, which set forth the procedures to govern the proposed merger. In 1949, concluding that the merger had the approval of a sufficient percentage of the adherents of the Congregational Christian faith, the General Council voted to consummate the Union; and a similar decision was made by the Evangelical and Reformed Church.

The General Council's determination to consummate the merger is strenuously opposed by many of the Congregational Christian Churches. The nonassenting group believes that the proposed United Church of Christ represents a drastic change from the traditional polity of the Congregational Christian Churches. Since their origin in this country in 1620 these have been independent, self-governing fellowships without any central ecclesiastical control. These independent fellowships have, however, established certain regional associations and a national council, the defendant General Council of the Congregational Christian Churches of the United States. Also established on a national scale were the various boards, agencies, and corporations which are defendants to this action. Typical of these are the American Board of Commissioners for Foreign Missions, denominated "the agency of the Congregational Christian Churches for the extension of Christ's kingdom abroad," and The Annuity Fund for Congregational Ministers, a corporation whose purposes are obvious. These organizations administer substantial financial assets. And of course each Congregational Christian Church owns church property the sum total of which runs into hundreds of millions of dollars.

The nonassenting churches believe that the merger would destroy or substantially alter the nature of Congregationalism. The United Church of Christ, it is contended, will be organized on presbyterian lines, as an authoritative church governed by ecclesiastical bodies with sovereignty over the constituent churches, members, and ministers. The nonassenters maintain that the General Council, which they believe to be an agency possessing only very limited delegated powers, lacked any authority to commit the Congregational Christian Church to any merger with another church. Thus they contend that the Basis of Union is wholly unauthorized. The nonassenters also assert that this unauthorized act by the Council commits all members of the Congregational Christian denomination to membership in the United Church of Christ, and it is claimed that if the nonassenters choose to remain outside that body they will be deprived of their rights in the assets held by the General Council, the funds, and agencies.

To halt this development, one of the nonassenting groups, the Cadman Memorial Society of Brooklyn and the Cadman Memorial Church, brought suit in 1949 against Helen Kenyon, the Moderator of the General Council. This suit, which was filed in the Supreme Court of New York State, was brought "on behalf of themselves and other Congregational Churches similarly situated." The Cadman Church and Society requested a declaratory judgment that the General Council had no power to consummate the Basis of Union or to unite with the Evangelical and Reformed Church; that no acts taken by the General Council can or will affect individual Congregational Christian Churches without their voluntary assent; that those churches which do join the new church will thereby lose all rights in and control of the various corporations, boards, and instrumentalities which had been established for the furtherance of Congregationalism. Cadman also prayed for an injunction halting the merger of the

churches and the consolidation of the corporations, boards, and agencies with their counterparts in the Evangelical and Reformed Church.

The state supreme court granted Cadman's pleas, declaring that the General Council was powerless to consummate the Basis of Union and enjoining any further actions in that direction. The court specifically enjoined the Council from uniting or transferring the corporations, agencies, and instrumentalities of the Congregational Christian Churches, or their funds and properties, with or to any agency of the Evangelical and Reformed Church or the United Church of Christ. Cadman Memorial Congregational Soc. of Brooklyn v. Kenyon, 197 Misc. 124, 95 N.Y.S.2d 133 (1950). On appeal, the Appellate Division reversed the judgment of the supreme court on the law and the facts, and ordered the plaintiffs' complaint dismissed. 279 App.Div. 1015, 1074, 111 N.Y.S.2d 808 (1952). This judgment was affirmed in a full opinion by the New York Court of Appeals, two judges dissenting. 306 N.Y. 151, 116 N.E.2d 481 (1953).

Subsequently on June 20, 1957, this action was commenced in the United States District Court for the Southern District of New York. The plaintiffs are other nonassenting churches, ministers, members of churches, and members of the various boards and agencies of the Congregational Christian Church. Defendants are the Evangelical and Reformed Church, the Treasurer of the General Council, the several boards, agencies, and corporations, and the co-President of the United Church of Christ. Because determination of the precise nature of the relief requested by plaintiffs is crucial to a resolution of the issues raised on this appeal, we find it necessary to set out at some length the gist of the voluminous and repetitive complaint.

The prayer for relief requests certain specific declarations to be made; these fall into several general classes. The first of these in essence ask for declarations that the Basis of Union is invalid, that the General Council lacked power to enter into the Union, and that the General Council could not merge or consolidate the agencies, boards, and corporations of the Congregational Christian Churches with those of the Evangelical and Reformed Church. The second class are requests for declarations that the statements in the Basis of Union that the ministers and members of each communion shall be enrolled in the United Church of Christ, and that the individual churches shall become members of that Church, are invalid and void. A third class are requests for declarations of the invalidity of the provisions of the Basis of Union purporting to alter the status of the General Council, agencies, and corporations by merging these with any similar bodies of the Evangelical and Reformed Church. A fourth class ask for declarations that the General Council cannot by its own act bring any individual church into the United Church of Christ, make any individual a member of the United Church of Christ, or enroll any minister as a minister of the new church. The final class of requested declarations are that no minister shall be required to withdraw "from the fellowship of the Congregational Christian Churches"; that the churches, ministers, and members may not "be deprived of their rights in and to the assets, properties and organizations of the Congregational Christian agencies and instrumentalities * * * by reason of their remaining Congregational Christian Churches, ministers and members instead of becoming part of the 'United Church of Christ.'" Further declarations are asked to the effect that the agencies and instrumentalities may not unite with agencies of the Evangelical and Reformed Church or with the United Church of Christ. Upon the separate trial ordered by Judge Dimock on defendants' affirmative defenses of res judicata and collateral estoppel and after long hearings, Judge Dimock in an extensive reasoned opinion granted defendants' motion to dismiss this complaint and thereafter entered the judgment of dismissal here under appeal.

■ The issues raised by the appeal can be stated very simply: What was decided by the New York courts in the Cadman litigation? and who is bound by that determination under principles of *res judicata?* Plaintiffs maintain that the Cadman judgment cannot affect them, because they were not parties in that action and were neither in privity with nor represented by either of the two plaintiffs. They also maintain that the defendants in the present suit are not the same as those in Cadman and thus cannot plead that judgment in bar. Finally, plaintiffs contend that the dismissal of the Cadman complaint was solely for failure to join indispensable parties—a flaw they claim to have corrected. Since jurisdiction in this suit is grounded on diversity of citizenship, we look of course to the law of New York to determine these issues.

■ The first question is whether plaintiffs, who were not named parties in the Cadman suit, may under applicable principles of *res judicata* be bound by the New York decision. New York, as most jurisdictions, permits representative actions to be brought by one or more members of a class of persons having common interests on behalf of the entire class. If the representation is adequate the determination in such a representative suit is binding on all members of the class. Brenner v. Title Guarantee & Trust Co., 276 N.Y. 230, 11 N.E.2d 890, 114 A.L.R. 1010. Defendants maintain, and the trial court found, that the Cadman action was such a representative suit and that the present plaintiffs, having common interests with the Cadman Church and Society, and adequately represented by them, are bound by the judgment rendered by the New York Court of Appeals. Plaintiffs, on the other hand, point to a variety of differences between their situation and that of the two Cadman plaintiffs which they say take them out of the class properly represented in that action. Among the more crucial of these differences are that, unlike the Cadman Church and Society, some of the churches that bring this action have

property which is subject to mortgages held by defendant The Congregational Church Building Society, and that here are joined ministers and individual church members, while there were no such parties represented in Cadman.

■ To bind members of a class not named as parties to a suit, a representative action must fulfill certain prerequisites. All members of the class must be necessary—indispensable—parties to the suit; that is, their interests in its outcome must be joint or common so that the rights of all are necessarily affected by any action brought by one or more. Brenner v. Title Guarantee & Trust Co., supra, 276 N.Y. 230, 11 N.E.2d 890, 114 A.L.R. 1010. Where such a community of interests exists, a class suit will nevertheless not bind absent members of the class if the named parties or representatives actually have interests in the outcome of litigation adverse or not necessarily similar to those of all members of the class. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741. The question whether in a particular suit the interests of an entire class are common and the representative shares then will depend on the specific issues raised and decided in that litigation. See Brenner v. Title Guarantee & Trust Co., supra, 276 N.Y. 230, 11 N.E. 2d 890, 114 A.L.R. 1010. Thus to decide whether plaintiffs were or could be represented in the Cadman litigation, we must also determine what the New York courts decided there.

■ It is our conclusion that as to the issues actually raised and resolved by the New York Court of Appeals in Cadman, the plaintiffs therein and the present plaintiffs form one class having common interests, and all were adequately represented by the Cadman Church and Society. Since no legal issue not determined by Cadman is raised by the present complaint, the judgment of the district court dismissing plaintiffs' complaint must be affirmed.

(1) Both the Cadman plaintiffs and the plaintiffs here requested declarations

that the General Council is powerless to effectuate the Union and thus the Basis of Union is invalid. Both also asked for declarations that the General Council cannot by its own act unite the individual Congregational Christian Churches with the United Church of Christ. In Cadman, the New York Court of Appeals faced this issue and indicated that, at least as far as the civil courts could examine the question, the acts of the General Council were wholly proper. That court stated that "there is no power and none is claimed by which the General Council can compel or intends to compel the plaintiff Cadman or any other nonassenting church to join the Union unwillingly or impose upon them a change of faith or doctrine," and affirmed the validity of the Basis of Union. Cadman Memorial Congregational Soc. of Brooklyn v. Kenyon, supra, 306 N.Y. 151, 163, 116 N.E.2d 481, 485. (It should be noted that even the dissenters in the New York Court of Appeals agreed that the General Council was authorized to enter into the merger and implement the Basis of Union.) The questions of the validity of the General Council's action and its effect on individual congregations were legal issues in which all the present plaintiffs have the same interest as the Cadman plaintiffs and to which the differences in their various situations are irrelevant; and thus as to these questions the decree is binding on all.[2]

(2) Both in Cadman and in this case plaintiffs requested rulings that the merger of the boards, agencies, and corporations of the Congregational Christian Church was unlawful. The New York Court of Appeals pointed out that all the funds which were contributed to these charitable entities were given in the form of voluntary donations to be used by the corporations for their general purposes. It ruled that in such a case the civil courts can only scrutinize the expenditure of funds to determine if the use is not violative of charter purposes. Finding neither any direct interest of the plaintiffs in the funds nor any charter violations, it concluded that the complaint should be dismissed. Since the plaintiffs here, as the district court found, also all have made only voluntary contributions, if any, and no further charter violations are shown, the present plaintiffs were clearly members of the class represented by the Cadman Church and Society for purposes of resolving the status of the boards and agencies, and are bound by that decision.

(3) There remains the request made by the present plaintiffs for a declaration that ministers, members, and nonassenting churches may not be deprived of their rights in the assets, properties, and organizations of the Congregational Christian agencies and instrumentalities. If they could show some right or interest adverse or dissimilar to that of the Cadman plaintiffs in these assets, etc., the present plaintiffs might prevail in their claim that the Cadman Church and Society could not adequately represent them in the litigation of such an issue. They have, however, made no such showing. While they point to certain differences of interest, no showing is made that these differences give plaintiffs here a claim or right to a declaratory judgment different from that asserted by Cadman. And while such a separate claim or right might arise if, for example, a mortgage were foreclosed or a pension denied because of refusal to join the United Church of Christ, we cannot on the present record ascertain any imminently threatened interest which the present plaintiffs possess which so differentiates them from the Cadman plaintiffs, in terms of the issues there decided, that the Cadman plaintiffs could not adequately represent *all* the varying nonassenters.

**2.** While it is not wholly clear from the Court of Appeals decision whether it upheld the Basis of Union on the merits or because the question of its invalidity was beyond the cognizance of the civil courts, it would make no difference to resolution of the issues presented here which of these grounds of decision was in fact adopted.

The final point raised is whether those defendants in this case who were not parties in Cadman may plead that decree as *res judicata*. Since all the defendants herein have the same interests as the General Council, which defended the Cadman litigation, they under the law of New York may claim the benefit of that decision, even if they may not be made to bear its burdens. Israel v. Wood Dolson Co., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97; Gart v. Cole, 2 Cir., 263 F.2d 244, certiorari denied 359 U.S. 978, 79 S.Ct. 898, 3 L.Ed.2d 929.

Affirmed.